105 N.J. Super. 33 (1969)
250 A.2d 802
THE STATE OF NEW JERSEY,
v.
MICHAEL KUZNITZ, DEFENDANT.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided March 3, 1969.
*34 Mr. John H. Stamler, Assistant Prosecutor, for the State (Mr. Leo Kaplowitz, Prosecutor of Union County, attorney).
Mr. Barry M. Epstein, for defendant (Messrs. Reibel, Isaac & Tannenbaum, attorneys).
FULOP, J.S.C. (temporarily assigned).
Defendant moves to suppress evidence seized under a warrant issued out of the Union County Court.
*35 The evidence sought to be suppressed was seized in Apartment 2-D, 30 East Elm Street, and in defendant's home at 353 Miltonia Street, both in Linden, New Jersey. The warrant also permitted the search of three cars registered in the name Edna Kuznitz, 353 Miltonia Street, Linden, New Jersey, two of which were seen in use by defendant in travelling a few blocks from his home to the apartment. It appeared at the oral argument that nothing of evidential value was found or seized in any of the automobiles. Part of the items seized were taken at the apartment and part in the house on Miltonia Street.
Defendant Michael Kuznitz has been indicted for bookmaking and maintaining a gambling resort at Apartment 2-D, 30 East Elm Street, Linden, New Jersey.
The affidavit of Union County Prosecutor's Detective E.H. Haines, upon the basis of which the search warrant was issued, recites his qualifications as an expert in the detection of gambling law violations. It states that defendant was convicted for bookmaking in Linden in 1953 and again in 1963. General information that Kuznitz had resumed operations came to the attention of Haines followed by specific information from a known reliable informant to the chief of county detectives on October 31, 1967 that Kuznitz was taking sports bets and some details of his practice. On November 10, 1967 the same informant stated that Kuznitz was using a white car with plates numbered 427 when making his rounds for collections and pay-offs.
Haines ascertained from the Division of Motor Vehicles that a white Buick bearing registration IAU-427, and a black Rambler bearing registration EVK-356, were registered in the name of Edna Kuznitz, 353 Miltonia Street, Linden, New Jersey, defendant's home. The detective observed these two cars parked at that address.
On Sunday, May 5, 1968, beginning at 10:30 A.M., Haines watched defendant's home. At 11:15 A.M. defendant came out and left in the Rambler. He went one block, parked, got out, looked around the area, walked hurriedly *36 into a three-car garage at 308 Miltonia Street, and got into a gray Chrysler later discovered to be registered in the name of Edna Kuznitz at defendant's home address. He drove to a store, bought a newspaper, drove to 30 East Elm Street and entered the apartment house at that address at 11:25 A.M. This conduct fitted with information received from the informant as to defendant's practice.
On May 7, 1968 Haines watched 30 Elm Street and at 5:30 P.M. saw defendant arrive in the gray Chrysler, park and enter the apartment house. He watched defendant go up the stairway to the second floor and enter the center apartment on the left. At 6:15 P.M. on the same day Haines returned to the apartment building and found that the apartment Kuznitz had entered bore number 2-D and the name "Mrs. Emma Grey." While in the hall he overheard a loud male voice in the apartment apparently taking telephone calls, receiving bets on sporting events, and giving out the odds on baseball games to be played that evening. At 8:10 P.M. defendant left the apartment house and returned to his home in the gray Chrysler.
On May 9 the search warrant was applied for and issued by Judge DeVita. It was executed at 7:30 P.M. on the same day.
The motion to suppress is based on three grounds, namely:
1. A material part of the evidence presented on the application for the search warrant was the result of Detective Haines's listening outside of the door of Apartment 2-D. Defendant contends that this was impermissible eavesdropping in violation of defendant's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, and that all fruits thereof should therefore be suppressed.
2. The evidence presented to obtain the search warrant was insufficient to connect defendant's home or the automobiles with the bookmaking operation and did not justify the issuance of a warrant to search these places.
3. The officers executing the search warrant at the apartment did not announce their authority or purpose before *37 "hitting" the door or attempting to break in. It is contended that the warrant was therefore illegally executed and the results of the search of the apartment should be suppressed.
No evidence was presented on this motion. Aside from the matters appearing in the application for the search warrant, the only facts presented are an offer by the prosecutor in his brief to stipulate that "no notification as to the identity and purpose were given before the officers began `hitting' the door; however, during the five minutes the officers worked on the door  to no avail  they were shouting `Police' and `Open up'"; some photographs showing damage to the door of the apartment at 30 East Elm Street in Linden, and some showing a barricade of two by fours and two-by-twos on the inside of that door preventing entry. It is orally stated that the officers never succeeded in forcing their way into the apartment but were eventually admitted by defendant.
Defendant's first contention raises the question whether eavesdropping by the unaided use of the human ear outside of premises occupied by a suspect constitutes an illegal search and seizure under Berger v. State of New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed 2d 576 (1967), and requires suppression of the evidence thus obtained. No case has been cited and I know of none in which merely listening by a law enforcement officer without the aid of a device extending his hearing into private quarters has been held to violate constitutional rights. The Congress of the United States in passing the 1968 statute governing wire interception and interception of oral communications, Public Law 90-351, § 801 and § 802, dealt only with interception by "electronic, mechanical or other device." The New Jersey Legislature has recently adopted Chapter 409 of the Laws of 1968 (N.J.S. 2A:156A) similarly limited to regulating the use of electronic, mechanical or other devices for eavesdropping. The Legislature was aided by a model statute prepared by Professor G. Robert *38 Blakey of the Notre Dame University Law School which was similarly limited. It is safe to say that if either of these legislative bodies and their learned advisors had read the above-cited decisions of the United States Supreme Court as referring to overhearing of oral communications by the unaided human ear, the statutes would have dealt with this subject also. I am satisfied that, in general, eavesdropping by law enforcement officers without the use of any electrical, mechanical or other device, and without wiretapping, is not a search or seizure requiring the issuance of a warrant, at least in this case in which the officer was in a public hallway where anyone who listened could hear the communication. Cf. Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961); State v. Smith, 37 N.J. 481 (1962).
However, as to both the first and second reasons advanced for suppressing all or part of the material seized, I am bound by State v. Kasabucki, 52 N.J. 110 (1968), in which the Supreme Court said
"* * * Once the judge has made a finding of probable cause on the proof submitted and issued the search warrant, a reviewing court, especially a trial court, should pay substantial deference to his determination. In fact, another trial judge of equal jurisdiction should regard as binding the decision of his brother that probable cause had been sufficiently shown to support a warrant, unless there was clearly no justification for that conclusion * * *" (at p. 117)
In this case the warrant was issued by a judge of the county district court sitting in the Union County Court. I am sitting in the same court and exercising the same jurisdiction. Therefore, in compliance with the rule laid down by the Supreme Court, I treat the decision of the issuing judge binding to the effect that probable cause was shown for the issuance of the warrant in all its parts.
Defendant's third contention deals with the execution of the warrant and has not been passed upon by any other judge. Defendant contends that the attempt of the officers to enter the place in which he was allegedly conducting his *39 bookmaking business without first announcing their authority and purpose in seeking entry renders invalid the search which they made pursuant to the warrant. In support of this contention he relies on Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), which in turn rests on Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). No New Jersey authority is cited for defendant's proposition. No federal constitutional provision prescribes the manner of execution of search warrants.
In State v. Smith, 37 N.J. 481 (1962), detectives peering through a crack at the molding of a door saw defendant with a tourniquet around his arm and a hypodermic needle in his hand. Without a warrant and without demanding admittance or revealing their mission, they broke in, arrested defendant, and seized the narcotics paraphernalia. In considering whether the unannounced forced entry into defendant's apartment invalidated the subsequent arrest and seizure, the court said:
"* * * In Miller v. United States * * * it was held that an arrest was unlawful when the officers broke in without a demand or a statement of their mission, and hence evidence seized in connection with the arrest must be excluded. Although there is a federal statute (18 U.S.C. § 3109) which provides that an officer may break in to execute a search warrant `if, after notice of his authority and purpose, he is refused admittance,' it is clear the Supreme Court deemed the statute to reflect the common law with respect to the arrests with or without a warrant. * * *
We assume for present purposes that Mapp [v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)] makes Miller applicable to the states even though the authority to arrest is clear and the claimed illegality inheres in the manner in which the arrest was made. The question then falls within the area as to which Miller expressly reserved judgment. * * *
In People v. Maddox, 46 Cal.2d 301, 294 P.2d 6 (Sup. Ct. 1956), cert. denied 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956), referred to in * * * Miller * * *, the court was confronted with a state statute essentially the same as the federal act in Miller. The court held that the likelihood that the evidence would be destroyed if the officers announced their mission was sufficient to excuse compliance with the act. * * *
*40 The Restatement, Torts § 206, sustains that view.

* * * * * * * *
The question then is whether the Fourth Amendment intended to nullify the State's clear right to search by imposing a condition which would defeat it. If the State's right to the contraband is to be denied, it must be because of the evident danger and rudeness of a sudden entry. But the danger and the rudeness are not the gratuitous product of official insolence or indifference; they are the consequences of the criminal enterprise, made inescapable by its nature. * * * It seems to us that the Fourth Amendmentt does not transmute a `reasonable' search into an `unreasonable' one merely because the officer discharged his duty to arrest and search in a manner which fairly appeared necessary for the successful enforcement of the State's right * * *." (at pp. 497-499)
The Supreme Court sustained the search and seizure. Although this case was decided before Sabbath, it was decided after Miller. Sabbath adds nothing to Miller which would affect the ruling in Smith. Although it has been assumed that the federal rule may be applied to the states, the cases were in fact decided only under 18 U.S.C., § 3109, a federal statute not applicable to state officers. Both Miller and Sabbath recognize that the manner of execution of search warrants is a matter of local law, as held in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), sustaining a search and seizure by state officers without a warrant and without warning to the occupants. The cases recognize that a request for admission and announcement of purpose are not required when the officers have reason to believe that they would defeat the purposes of the warrant as by the destruction of the evidence sought. Under circumstances similar to those in this case, the highest courts of Connecticut and Pennsylvania have sustained entry and search. Commonwealth v. Ametrane, 422 Pa. 83, 221 A.2d 296 (Sup. Ct. 1966); State v. Mariano, 152 Conn. 85, 203 A.2d 305 (Sup. Ct. 1964).
The destruction of incriminating evidence in bookmaking and narcotics cases between the time when an officer announces his presence and the time required to reach the *41 evidence is so common that it has been referred to in innumerable cases and is a matter of common knowledge. Bookmakers commonly keep records of bets received on small and easily disposable pieces of paper, frequently water soluble paper such as was found in the premises here involved.
Defendant had been convicted on bookmaking charges twice before the present incident. Such a man would know what the law enforcement officers wanted. He was in an apartment separate from his home, apparently for the purpose of operating the business. He had the door barred with a structure of beams. To require the officers executing a warrant to announce through a barred door their purpose to search for evidence of bookmaking and thus give the suspect a chance to dispose of the evidence sought, would render the search warrant wholly nugatory. The officers in this case clearly had reason to believe that this would be done unless they got in fast.
However that may be, there is no evidence in this case as to the manner of execution of the warrant. Defendant's counsel stated at oral argument that he would submit no evidence in view of the "stipulation" in the prosecutor's brief quoted earlier in this opinion. It was stated without dispute at the oral argument that the officers did not succeed in breaking into the apartment but were eventually admitted by defendant. If so, the search was not effected as a result of unannounced entry. To grant defendant's motion the court would have to assume without proof that the admittance resulted from duress of property. There is no evidence that the officers did not knock on the door or ring a bell, or what response they got thereto or to the first blow on the door. There is no evidence as to defendant's knowledge or lack of knowledge that the men at the door were officers or their purpose. All of these matters and all of the circumstances should be considered in determining whether or not the search was illegally conducted.
*42 Defendant avoided taking the witness stand on the motion by relying on an incomplete admission in the prosecutor's brief. A motion of this character should not be decided on so slight a basis. Defendant's contentions and the State's should be presented in live testimony. Cf. State v. Sherry, 46 N.J. 172 (1965). The trial courts have been admonished to refrain from deciding significant matters without an adequate record. Jackson v. Muhlenberg Hospital, 53 N.J. 138 (1969). The court cannot ordinarily compel the production of evidence. See Band's Refuse Removal, Inc. v. Fairlawn, 62 N.J. Super. 522 (App. Div. 1960), certification denied 33 N.J. 387 (1960). It can only determine the matter on the evidence presented. The failure of proof must be charged against the party charged with the burden of persuasion.
The warrant is presumed valid and the burden of proof is upon the defendant to show the invalidity of the search. State v. Gaudiosi, 97 N.J. Super. 565 (App. Div. 1967); State v. Mark, 46 N.J. 262, 273 (1966). There is a presumption that law enforcement officers acted legally in executing the court's warrant. See 1 Wharton's Criminal Evidence (12th ed. 1955) § 127, p. 238, and 1969 pocket-part; Earl v. Winne, 14 N.J. 119 (1953); In re Sheriff of Monmouth County (not officially reported) 69 A. 305 (Sup. Ct. 1906), DeMarco v. Board of Chosen Freeholders, Bergen County, 36 N.J. Super. 382 (Law Div. 1955), affirmed 21 N.J. 136 (1956). In People v. Jager, 145 Cal. App.2d 792, 303 P.2d 115 (App. Ct. 1956), the court said: "In the absence of evidence to the contrary it will be presumed that an entry of private premises by police officers was made in a legal manner. People v. Kelsey, 140 Cal. App.2d 722, 295 P.2d 462."
The burden of proof is therefore on defendant to establish that the officers executed the warrant illegally. I cannot find that to be the fact from the single sentence in the prosecutor's brief. I shall not presume illegality.
*43 The motion to suppress is denied. The prosecutor is directed to submit an order in conformity herewith within ten days of date.