135 N.J. Super. 591 (1975)
343 A.2d 825
STATE OF NEW JERSEY, PLAINTIFF,
v.
DAVID CYMERMAN, HEIDI CYMERMAN, SOLOMON CYMERMAN, JOHN GARNER AND LISA BRICK, DEFENDANTS.
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN GARNER, LISA BRICK AND SOLOMON CYMERMAN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 3, 1975.
*594 Mr. Robert L. Cerefice for plaintiff (Mr. Kenneth Ply on the brief).
Mr. Barry M. Epstein for defendants David Cymerman and Heidi Cymerman (Messrs. Reibel, Isaac, Tannenbaum & Epstein, attorneys).
Mr. John A. Ridley for defendant Solomon Cymerman (Messrs. Crummy, Del Deo, Dolan & Purcell, attorneys).
McGLYNN, J.D.C., Temporarily Assigned.
Defendants move to suppress a sizeable quantity of marijuana and numerous other items of contraband seized from an apartment at 265 Grove Street, Elizabeth by members of the Union County Prosecutor's Office and Elizabeth narcotics squad. The seizure was authorized by Superior Court Judge Harold A. Ackerman following a telephone conversation he had with Lt. Richard Mason of the Union County Prosecutor's Office and Assistant Prosecutor John H. Stamler of *595 that office. The question presented, a novel one in New Jersey, is whether a search warrant may be applied for and issued telephonically. I am of the view that such a warrant is valid and the seizure resulting from its issuance will be sustained.
Judge Ackerman was called at his home by Assistant Prosecutor Stamler shortly before 1 a.m. on March 18, 1974. Stamler and Mason both spoke with the judge simultaneously and presented information which had been received by Mason at 12:35 a.m. at his home. The conversation relating to the information and the warrant was recorded by Stamler and a transcript of the conversation from the preserved recording was prepared and later certified by Judge Ackerman. It reveals that the judge was called for the express purpose of hearing an emergent application for a search warrant.
Following the administering of an oath to Lt. Mason over the telephone by Judge Ackerman, Stamler asked the judge to accept Lt. Mason's qualifications as an expert in the field of drug abuse. Judge Ackerman did so based upon his prior knowledge of Mason's qualifications. Mason then told Judge Ackerman that some 20 minutes earlier he had received a phone call from Detective Pariso of the Essex County Strike Force, in which Pariso told him that at midnight a subject had been arrested in the South Mountain Reservation in Essex County following the sale of 40 pounds of marijuana to an undercover agent. The subject had told the Essex authorities that the 40 pounds was part of a large shipment of 300 pounds which had been brought into New Jersey by him and the defendant David Cymerman and that the remaining marijuana was in Cymerman's apartment at 265 Grove Street in Elizabeth. Pariso also told Mason that when they were effectuating the arrest in Essex County another person involved with defendants had escaped apprehension on foot and was at that time being sought by the authorities. Mason advised that the Essex County authorities *596 were concerned that if the person who escaped got to a telephone, he would call Cymerman and that therefore the balance of the marijuana would be lost from detection and seizure. Finally, Mason told Judge Ackerman that he had received reliable information from Pariso and other law enforcement authorities in Pariso's office on approximately 50 prior occasions, and that many substantial drug seizures had been made as a result of the prior information.
Stamler then advised the judge that he sought a search warrant limited solely to the apartment Mason described at 265 Grove Street, Elizabeth. Finding that probable cause existed for a search of the premises based on the information given to him in the call, Judge Ackerman authorized the search of the premises at 1:06 a.m. and further authorized Stamler to advise any persons at the apartment that the officers were acting pursuant to Judge Ackerman's authorization. A return on the warrant was prepared on March 20 and indicates that Stamler, Mason and five other officers executed Judge Ackerman's warrant at 1:19 a.m. on the apartment in question. The return and inventory of items seized were served on defendants David and Heidi Cymerman, the occupants of the apartment in question.
The evidence seized was made the basis of a conspiracy charge against those two defendants, Solomon Cymerman, John Garner and Lisa Brick. The overt acts include an allegation that on March 17, 1974 Garner, Brick and Solomon Cymerman possessed marijuana and Garner and Brick possessed LSD in Livingston, and that David and Heidi possessed marijuana in Elizabeth. A separate indictment charges Garner and Brick with possession and possession with intent to distribute LSD on March 17, 1974 in Livingston, and Garner, Brick and Solomon Cymerman with possession and possession with intent to distribute marijuana on the same date in Livingston. All of the charges against Garner and Brick have been disposed of and all of the remaining charges against David, Heidi and Solomon consolidated for *597 the purpose of trial. The Cymermans bring this motion to suppress.
At the very outset they contend that the evidence seized in Elizabeth pursuant to Judge Ackerman's authorization must be suppressed since the State absolutely failed to comply with the requirements of R. 3:5-3. That rule requires that the applicant for the warrant personally appear before the issuing magistrate. It contemplates that a written warrant be dated and issued, specifying the place to be searched, the property seized and the permissible hours of execution. Since Mason did not personally appear before Judge Ackerman, and since no written warrant was issued, defendants contend that the seizure was invalid.
This argument is without merit. It ignores the existence of R. 1:1-2, which permits the relaxation of any rule (with exceptions not applicable here) if adherence to the rule would result in an injustice. In State v. Fariello, 133 N.J. Super. 114 (App. Div. 1975), for example, the failure of the issuing judge to comply with the requirements of R. 3:5-6 regarding the filing of a summary of oral testimony was held not to invalidate an otherwise proper search. See State v. Clemente, 108 N.J. Super. 189 (App. Div. 1969), certif. den. 55 N.J. 450 (1970); In re Search of C Co. Premises, 115 N.J. Super. 262 (App. Div. 1971). In State v. Parsons, 83 N.J. Super. 430 (App. Div. 1964), the failure of searching officers to execute a proper return as required by present R. 3:5-5 was held not to vitiate an otherwise proper search. The court stated that the return of a search warrant is a ministerial act and that a deficiency or failure in the return does not avoid the warrant or search thereunder, "even if no return is made at all." 83 N.J. Super. at 445. Similarly, in State v. Harris, 98 N.J. Super. 502 (App. Div. 1968), certif. den. 51 N.J. 396 (1968), the failure to file the affidavit in accordance with present R. 3:5-6 was held not to be fatal to an otherwise valid search. The court stated:
*598 The rule requiring the filing of the affidavit is directory only. It was adopted in order to facilitate the administration of justice. It may not be used to frustrate that objective. The failure to comply with that rule does not automatically result in the invalidity of an affidavit or a warrant otherwise lawful. A wrongdoer should not benefit by the suppression of incriminating evidence simply because those documents have been lost. [98 N.J. Super. at 504-505]
Thus, it would appear that the rules relating to the issuance of search warrants are indeed subject to the general relaxation rule so long as no basic Fourth Amendment rights are thereby abridged.
Defendants contend that the requirement in R. 3: 5-3 of a face-to-face confrontation between the issuing magistrate and the affiant is of constitutional dimension. I disagree. The Fourth Amendment requires that warrants issue "supported by oath or affirmation," while the requirement that the oath be taken by the issuing magistrate in the presence of the affiant appears to be judge-made. Defendants contend that State v. Petillo, 61 N.J. 165 (1972), cert. den. 410 U.S. 945, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973) mandates a contrary conclusion. However, it would appear from Petillo that it is the oath itself and not the face-to-face confrontation which is mandated and which is at the core of the Fourth Amendment requirement. 61 N.J. at 174. Under the circumstances here, the oath administered to Mason by Judge Ackerman over the telephone was adequate to satisfy the Fourth Amendment mandate. An officer could no more avoid the sanction for perjury or false swearing by supplying false information over the telephone than if he lied after taking the oath with his fingers crossed behind his back in the judge's presence.
Moreover, there is no constitutional impediment to a telephonic application for the issuance of a warrant and its issuance telephonically. R. 3:5-3 contemplates an oral presentation in that it expressly permits the judge to examine, under oath, the applicant himself or any witness whose information the judge may require. The rules of court governing *599 search warrants are meant to fulfill the constitutional need for a "verified showing of probable cause before the issuing magistrate." State v. Macri, 39 N.J. 250, 260 (1963); State v. Mark, 46 N.J. 262 (1966). The rules, then, are designed to embody the constitutional mandate and to promote uniformity in the issuance and execution of the search warrants and, most importantly, the preservation of testimony and other evidence for use, if necessary, in subsequent motions to suppress. That mandate was satisfied here by the recording of the conversation Mason and Stamler had with Judge Ackerman.
In an attempt to encourage police officers to apply for search warrants as often as possible prior to conducting searches of constitutionally protected areas, several states have authorized the use of a procedure to apply for a search warrant orally or telephonically, similar to the procedure used in the present case. See Cal. Penal Code § 1528(b) and Ariz. Rev. Stat. Ann. § 13-1444(C). A proposal to amend N.J. Court Rules 3:5-3 and 3:5-6 to provide for such telephonic search warrants has been made by the Office of the Attorney General, Division of Criminal Justice, but has yet to be adopted. See Note, "Telephonic Search Warrants: A Proposal," 2 Crim. Justice Q. 151 ff. (1974).
The California statute which authorizes such oral search warrants has been upheld against constitutional attack, People v. Peck, 38 Cal. App.3d 993, 999-1000, 113 Cal. Rptr. 806, 810 (D. Ct. App. 1974), and it had previously been decided that telephonic applications were included in the designation "oral." People v. Aguirre, 26 Cal. App.3d Supp. 7, 103 Cal. Rptr. 153 (App. Dept. Super. Ct. 1972). See also, Miller, "Telephonic Search Warrants: The San Diego Experience," 9 The Prosecutor 385 (1975); "Oral Search Warrants: A New Standard of Warrant Availability," 21 U.C.L.A.L. Rev. 691 (1974).
While concededly the better practice in all search warrant cases, including those obtained by telephone, should *600 be that a copy of the warrant be served on the owner of the premises searched, prior to or at the time of the search, R. 3:5-3 does not place such a time limit on its directive concerning service of the search warrant. Under the very similar Federal Rule of Crim. Proc. 41(d), it has been held that it is not mandatory that a copy of the warrant be served on the person searched before the search takes place. Katz v. United States, 389 U.S. 347, 355 fn. 16, 88 S.Ct. 507, 19 L.Ed.2d 576, 584 (1967). Thus, a person whose conversation is being intercepted pursuant to a valid court authorized warrant need not be advised of such beforehand. Furthermore, the failure to present a search warrant at the time of the search is not a constitutional infirmity where the search is otherwise valid. State v. Martelle, 252 A.2d 316 (Me. Sup. Jud. Ct. 1969), Poole v. State, 467 S.W.2d 826 (Tenn. Crim. App. 1971), Nor should law enforcement officers be prevented from making a search under a valid warrant by the mere happenstance that no one is occupying the premises to be searched at the time the officers arrive. See, e.g., Kirby v. Beto, 426 F.2d 258 (5 Cir.1970), cert. den. 400 U.S. 919, 91 S.Ct. 181, 27 L.Ed.2d 159 (1970).
In Bowyer v. Superior Court of Santa Cruz County, 37 Cal. App.3d 151, 111 Cal Rptr. 628 (D. Ct. App. 1974), reh. den. 112 Cal Rptr. 266 (D. Ct. App. 1974), the court held that a search conducted under the California "Oral search warrant" statute was invalid due to the failure of the police to execute a warrant in written form, in contravention of the provision in the statute that a "duplicate original warrant" be signed by the police officer who obtained an oral warrant not in the presence of the issuing magistrate. 37 Cal. App.3d at 164, 111 Cal. Rptr. at 636. However, a close reading of this case reveals that the holding is based more on the statutory ground, including relevant legislative history, than on any constitutional requirement that a physical warrant *601 be displayed in every case prior to a search. 37 Cal. App.3d at 164-165, 111 Cal. Rptr. at 637.
Here, the Union County law enforcement authorities acted in a manner consistent with a proper respect for the defendants' Fourth Amendment rights. Despite the necessity for quick action, they first sought a judicial determination of probable cause to search, and only after receiving the authorization of Judge Ackerman did they commence to search. The failure in this case to draw up and execute a search warrant in writing is justified by the belief of the police that the time for action was short and any delay might well result in the removal or destruction of the evidence sought. In connection with the lack of a physical search warrant, it should be emphasized that the oral warrant was executed immediately by the same police officers who swore out the affidavit, and there was virtually no possibility of a mistake being committed in the execution of the warrant. "There is a presumption that the law enforcement officers acted legally in executing the court's warrant." State v. Kuznitz, 105 N.J. Super. 33, 42 (Cty. Ct. 1969). Defendants have not shown how they were prejudiced by the fact that the Union County officers did not have a physical written warrant in their possession when they executed the search. See United States v. McKenzie, 446 F.2d 949 (6 Cir.1971).
Defendants also contend that the information given Judge Ackerman was insufficient to justify the granting of the warrant. I disagree. Judge Ackerman has orally determined the issue of probable cause adversely to the defendants. I must, according to State v. Kasabucki, 52 N.J. 110 (1968), pay "substantial deference to that determination." Judge Ackerman's conclusion is binding upon me unless there is "clearly no justification for that conclusion." 52 N.J. at 117. Defendants contend that Judge Ackerman should not have accepted information supplied by the codefendant who was arrested in Livingston. They rely upon Pollock v. Superior Court, 272 Cal. App.2d 548, 77 Cal. Rptr. 565 (D. Ct. *602 App. 1969), and In re Golia, 16 Cal. App.3d 775, 94 Cal. Rptr. 323 (D. Ct. App. 1971), for the proposition that the uncorroborated assertions of an accomplice are insufficient to justify the issuance of a search warrant. Moreover, defendants rely on State v. Schelle, 126 N.J. Super. 596 (App. Div. 1975), which they assert establishes the acceptability of accomplice testimony only if it is supported by independent corroboration. I see no reason why accomplice testimony alone cannot rise to the level of probable cause sufficient to justify the issuance of a search warrant. I do not agree with defendants' implication that Schelle, supra, mandates corroborating evidence. It has long been the law in New Jersey that accomplice testimony alone is sufficient to convict a defendant at trial. See, e.g., State v. Hyer, 39 N.J.L. 598 (Sup. Ct. 1877); State v. Begyn, 34 N.J. 35, 54 (1961). Although a cautionary instruction is required when such testimony is offered at trial, the instruction is designed to apprise the jury that the witness's motives in implicating the defendant may be less than altruistic. Probable cause is, of course, less than guilt beyond a reasonable double. State v. Kasabucki, supra.
Defendants also contend that there was ample time available to Mason and Stamler to appear before a judge and follow the procedure mandated by R. 3:5-3. In my view, Petillo, supra, prohibits me from looking behind those facts presented to Judge Ackerman which would have justified an emergent telephonic application as well as those which go to probable cause. The decision that a situation demands a telephonic application rests upon solely with the issuing judge, and the testimony he relies upon in so deciding is not subject to attack. Moreover, his determination that the circumstances justified a telephonic warrant is entitled to the same weight as his determination of probable cause. State v. Kasabucki, supra. I find nothing in the transcript of the phone conversation which would indicate that there was no justification for Judge Ackerman's acting as he did.
*603 Two reasons exist for suppressing evidence. Justice Brandeis expressed what is probably the more important in his dissent in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). He spoke of the need to preserve the integrity of the courts. The courts, he said, should not condone law-breaking by government officials. "If the government becomes a law breaker, it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy." 277 U.S. at 485, 48 S.Ct. at 575. The second reason is to deter the police from illegal searches. State v. De Simone, 60 N.J. 319, 323 (1972). Hopefully, if police know that evidence seized in a manner contrary to the mandate of the Constitution will not be admitted against a defendant, they will not utilize the procedures which result in such seizures.
In the present case there is no reason to suppress. The procedure violated no constitutional provision. The information was reliable; probable cause and exigent circumstances existed, and the only defects were ministerial. The behavior of the police was exemplary. Had they conducted a raid without judicial sanction under the theory of exigent circumstances, no record of the justification for their actions would have existed and defendants and this court would have been forced to rely upon their oral testimony at a hearing. Such testimony has too often been criticized as conveniently altered on the theory that the end justifies the means. They chose, however, to receive judicial authorization, a most commendable decision. As the Supreme Court said in State v. De Simone, supra:
Needless to say there is no official arrogance when the officers place the facts before a magistrate for his view rather than search and seize upon their own assessment of the factual pattern when it accrues. Since it furthers the constitutional purpose to encourage applications to a magistrate, we should take a view of the problem which will make that course more feasible. [60 N.J. at 323 (1972)] *604 Surely, the behavior shown in the present case is to be not deterred, but encouraged, at least insofar as seeking judicial review is concerned. Similarly, there is no undermining of the integrity of our judicial system. The officers broke no laws, and they did not act until they received permission. Judge Ackerman's actions insured that improper behavior was not sanctioned.
A benefit will accrue to defendants if I suppress the results of this search, but not deservedly, in my view. Society should not be deprived of the protection offered by its law enforcement officers at times when they do nothing wrong. Rather, an individual who has clearly violated the law should reap the benefits of suppression only when the officers themselves disobeyed the law. Since in this case Lt. Mason and Assistant Prosecutor Stamler could not possibly be accused of insolence in office, society should not be deprived of the fruits of their labor. The procedures employed in this case may have been unorthodox, but they were not unconstitutional or otherwise illegal. The motion to suppress is denied.