161 N.J. Super. 575 (1978)
392 A.2d 169
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK E. LIBERTI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1978.
Decided June 29, 1978.
*577 Before Judges HALPERN, LARNER and KING.
Mr. Anthony L. Mezzacca argued the cause for appellant.
Mr. Richard W. Berg, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, and Mr. William F. Hyland, former Attorney General of New Jersey).
The opinion of the court was delivered by KING, J.A.D.
This is an appeal from the denial of a motion to suppress evidence seized pursuant to a search warrant issued by telephone. Following denial of the motion defendant pled guilty to two counts of the indictment. His right *578 to appeal from the guilty plea is preserved under R. 3:5-7(d).
The Bergen County Organized Crime Strike Force had been investigating the disappearance of 1 1/2 pounds of pure cocaine, with a potential value in excess of $1 million, from the State Police crime laboratory at Little Falls. Early in the evening of January 9 Lieutenant Joseph Delaney of the Strike Force was called to the crime laboratory to confer with other investigating officers. At the laboratory Delaney was told by Lieutenants Licitra and King that they were going to arrest Gail Kosmyna, a chemist at the laboratory and defendant's girlfriend. The missing cocaine had been in Kosmyna's custody for analysis following seizure in a pending criminal case. Kosmyna was thereafter arrested at her home and given her Miranda warnings. Under questioning by officers other than Lieutenant Delaney she admitted stealing the cocaine and giving it to the defendant. Kosmyna also admitted that other drugs which she had stolen were still in her home and car.
Kosmyna admitted speaking with defendant as recently as 7:30 P.M. on January 9. At that time defendant told her that he intended to sell the cocaine that evening. He said he would call Kosmyna later in the evening and if he could not reach her, he would assume she had been arrested and he would flee. Kosmyna also admitted supplying defendant with other drugs from the crime laboratory which he sold in the past.
Based on this information from the interrogating officers, at about 2:25 A.M. on January 10 Lieutenant Delaney telephoned Superior Court Judge Galda at home for an oral search warrant. Delaney made the call because he had known the judge for many years as a result of his official duties and knew his voice would be recognized. The call was placed from the crime laboratory in the presence of Licitra and King, to whom Kosmyna had confessed, and a Detective Scolpino. Judge Galda swore Delaney over the telephone and *579 through him confirmed the presence of the other officers. Delaney explained to the judge the investigatory background and the discovery that the cocaine was missing. Delaney then told Judge Galda of the highly incriminatory statements of Kosmyna, as related to him by the interrogating officers, and of the threatening exigent circumstances.
Judge Galda was told defendant's name and address and the registration number of his motor vehicle. He was given the same information concerning Kosmyna. Judge Galda then telephonically authorized the search of defendant's and Kosmyna's dwellings and automobiles. The judge directed Delaney to prepare and submit a written affidavit in support of the search warrant within 24 hours. The police searched defendant's home at 4:15 A.M. and the cocaine was seized.
The written affidavit was filed with the judge that afternoon. The written warrant was signed nunc pro tunc by Judge Galda at 3:30 P.M. on January 10, and stated the effective time of issuance at 2:20 A.M. on that day.
The conversation between Lt. Delaney and Judge Galda was not tape-recorded or stenographically transcribed. Judge Galda made contemporaneous handwritten notes of the conversation, which were admitted into evidence by consent. A copy of these notes is attached to this opinion. The judge signed and dated the notes, indicating "telephone notes written at time" at the bottom. At the top of the page he noted the time of the call from Lt. Delaney, that the witness had been sworn over the telephone, and that the warrant issued orally. He also noted the presence of Lt. Licitra and Detective Scolpino with Lt. Delaney. He noted the subjects of the search warrant, their addresses and vehicle identifications, the object of the search  1 1/2 pounds of cocaine  the method by which defendant obtained the stolen cocaine, the emergency basis for the application and the exigent circumstances.
Delaney testified that he asked the judge if he was going to "memorialize" the conversation in any way. The judge *580 replied that he was taking notes, but in the future would prefer the use of a tape-recording device.
On this appeal defendant contends that the issuance of a telephonic oral warrant based on an oral affidavit is constitutionally impermissible, as well as in violation of our rules of court. R. 3:5-3 provides:

Issuance and Contents
An applicant for a search warrant shall appear personally before the judge who must take his affidavit or testimony before issuing the warrant. The judge may also examine, under oath, any witness the applicant produces, and may in his discretion require that any person upon whose information the applicant relies appear personally and be examined under oath concerning such information. If the judge is satisfied that grounds for granting the application exist or that there is probable cause to believe they exist, he shall date and issue the warrant identifying the property to be seized, naming or describing the person or place to be searched and specifying the hours when it may be executed. The warrant shall be directed to any law enforcement officer, without naming him, and it shall state the basis for its issuance and the names of the persons whose affidavits or testimony have been taken in support thereof. The warrant shall direct that it be returned to the judge who issued it.
R. 3:5-6 states that where oral testimony is given in support of the application a transcript or summary must be filed in the clerk's office with the warrant.
No appellate opinion in this state has to date upheld the issuance of a telephonic search warrant. An opinion of the Law Division has so held. State v. Cymerman, 135 N.J. Super. 591 (Law Div. 1975). The facts in the present case and those in Cymerman are rather similar. Both applications involved early morning phone calls at home to Superior Court judges for judicial authorization to search living quarters for drugs which might quickly disappear if prompt action was not taken.
We are satisfied that defendant's constitutional rights were not abridged in the present situation. The judicial warrant to search issued from an impartial and detached Superior Court judge, after sworn testimony was given, on a *581 showing of probable cause, particularly describing the place to be searched and the thing to be seized. Neither the State nor the Federal Constitution require more. U.S. Const., Amend. IV; N.J. Const. (1947), Art. I, par. 7. The physical presence of the applicant before the issuing judge is not a constitutional mandate. See State v. Cymerman, supra at 597-599.
To the extent there has not been literal compliance with R. 3:5-3, our rules provide for relaxation if strict adherence would result in injustice. R. 1:1-2. Since we find that defendant's constitutional rights have been adequately protected, we approve relaxation of our rules in this instance. To insist on literal compliance would result in the suppression of highly probative evidence in a serious criminal case. Suppression of highly probative criminal evidence has been deemed the price required to protect constitutional rights, but is not a price which we will extract to insure precise procedural regularity under our state rules of practice.
We observe that several sister states and the Federal Government have adopted procedures for the use of oral or telephonic search warrants. See Fed. R. Crim. P. 41 (c) (2) (effective date July 30, 1977); Ariz. Rev. Stat. Ann. § 13-1444(c)-1445(c) (Supp. 1973); Cal. Penal Code, § 1526 (b); 1528(b) (West supp. 1974). See also, Israel, "Legislative Regulation of Searches and Seizures: The Michigan Proposals," 73 Mich. L. Rev. 221, 258-263 (1975); Nokel, "Proposed Revisions of North Carolina's Search and Seizure Law," 52 N. Car. L. Rev. 277, 306-311 (1973). A proposal for a rule change to specifically provide for telephonic search warrants in our rules has been advanced by our Attorney General. See Note, "Telephonic Search Warrants: A Proposal," 2 Crim. Just. Q. 151 (1974). Indeed, our wiretap statute contains a provision authorizing a judge to orally approve for electronic surveillance in emergency situations. N.J.S.A. 2A:156A-13. The constitutionality of the California statute was upheld in United States v. Turner, 558 F.2d 46 (2 Cir.1977), where the court stated:
*582 An "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed. * * * We cannot accept [defendant's] argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone. The moral, religious and legal significance of the undertaking remains the same whether the oath taker and witness communicate face-to-face or over the telephone. [at 50]
See also, People v. Peck, 38 Cal. App.3d 993, 113 Cal. Rptr. 806 (D. Ct. App. 1974).
In State v. Pointer, 135 N.J. Super. 472 (App. Div. 1975), certif. den. 69 N.J. 79 (1975), this court considered a case where the issuing judge had taken sworn oral testimony in support of the search warrant application from investigating officers who did not have time to present the customary affidavits. However, the oral testimony and issuance of the warrant was stenographically transcribed. The warrant to search was issued to the officers in oral form only. A nunc pro tunc written warrant was not issued until five days after the search. This court held that the warrant was actually written, although not in the customary form. We reasoned that the judge's warrant to search was memorialized in tangible, written form on the stenographer's tape. To the extent that the Federal and State Constitutions may compel the court's warrant to search and seize to be recorded in writing, and we are not presently prepared to hold that they do, we are satisfied that Judge Galda's note, wherein he wrote "search warrant issued verbally. s/F.C. Galda," amply fulfills such a requirement.
In this case we agree that the exigent circumstances confronting Judge Galda justified his issuance of a telephonic warrant. This "now or never" situation required prompt, decisive action. However, we do not condone such deviations from the normal procedure except in the most compelling circumstances. *583 The raiding officers in this case had no written warrant when they descended on defendant's dwelling. The lack of a written warrant elevates an already tense situation to one fraught with great danger of physical confrontation and challenge at the threshold. For this reason we again stress the warning in State v. Pointer, supra at 480, that "departures from normal practice in the issuance of search warrants should be assiduously avoided."
Defendant next contends that the procedure under which the warrant issued violated his rights as formulated in State v. Fariello, 71 N.J. 552 (1976). In that case the judge issued a warrant at home without any transcription or written summary of the oral testimony given in support of the application. The Supreme Court stated:
The motion-to-suppress hearing is the mechanism specifically designed to afford a defendant his most significant opportunity to participate in a process which vindicates the constitutionally-declared right against an unlawful search. While our result may originate in a mandate of public policy, it is largely because of a concern for the constitutional right that we insist on a punctilious observance of the most effective precaution against its being undermined  transcription or contemporaneous (or nearly so) summary of all oral testimony given in support of the application for a search warrant. [at 559]
The court observed that the purpose of the rules was to provide corroboration of the applicant's and the issuing judge's recollection in a form which permitted meaningful judicial review. The court noted that one danger in not creating a transcript was the possibility that an overzealous law enforcement officer might attempt to rectify any deficiencies in the oral testimony after the fact. The court allowed that "a summarization by the judge of whatever testimony may have been given before him" would suffice. Id. at 563-564. The court further stated:
Such a summarization should of course be made close upon the completion of that testimony, while the matter is still fresh in the judge's *584 mind. Certainly in the circumstances here presented this requirement could have been complied with by the issuing judge. [at 564]
Judge Galda's contemporaneous notes of the events surrounding the application and issuance of the warrant were sufficient to meet the requirement of State v. Fariello, supra. Though they were not overly detailed, they contain enough data on the critical points to insure reliability. We agree with the trial judge that any disagreement between Judge Galda's notes and Lt. Delaney's affidavit and testimony was trivial and inconsequential.
Finally, defendant argues that the facts presented to Judge Galda on the telephone did not supply sufficient probable cause to issue the telephonic warrant. We find sufficient credible evidence in the record to support the trial judge's conclusion that probable cause was established before Judge Galda. The State Police knew that the large quantity of pure cocaine was missing and Kosmyna had been the custodian. Defendant was suspected of drug activity by the police. Kosmyna's post-arrest statement, against her penal interest and with a full understanding of her Miranda rights, incriminating herself and implicating her boyfriend, the defendant, was sufficiently reliable under the circumstances to justify issuing the warrant. Judge Galda's finding on probable cause is entitled to "substantial deference" as "tested by the practical considerations of everyday life." State v. Kasabucki, 52 N.J. 110, 117 (1968).
Affirmed.
*585