108 N.J. Super. 189 (1969)
260 A.2d 514
THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
PAUL CLEMENTE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1969.
Decided December 31, 1969.
*191 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Abel Goldstein, Assistant Prosecutor, argued the cause for appellant (Mr. James A. Tumulty, Jr., Hudson County Prosecutor, attorney; Mr. Gregory J. Castano, Assistant Prosecutor, on the brief).
Mr. Gerald Miller argued the cause for respondent (Messrs. Miller, Hockman, Meyerson & Miller, attorneys).
The opinion of the court was delivered by MATTHEWS, J.A.D.
This is an appeal, pursuant to leave granted, from an order of the Hudson County Court suppressing certain evidence (91 decks of heroin) seized, pursuant to a search warrant, from the automobile and home of the defendant.
The search was made under a warrant issued by a judge of the Jersey City Municipal Court upon the affidavit[1] of detective *192 Potter of the Jersey City Police Department. The affidavit set forth detailed observations that were made by Potter, and other members of the Jersey City Police Narcotics Squad, during a ten-day surveillance, as well as information that had been received from a "reliable source." The affidavit contained no dates as to when the surveillance had been conducted, nor did it contain the date when the information from the supposedly reliable source had been received by the police. The affidavit did aver, in its opening paragraph, that narcotics are being stored in both the premises and the motor vehicle described particularly therein.
At the hearing on the motion to suppress, the State produced detective Potter, who had procured the warrant, and who proceeded to testify as to the circumstances surrounding *193 his application for it. The pertinent testimony was as follows:
Q. On that day when you made that application and submitted that affidavit, was there anything else submitted to the magistrate?
A. Just the usual, he asked how long the surveillance had been on.
Q. Did you give him any testimony under oath?
A. Yes, sir.
Q. Were you sworn in?
A. Yes.
Q. By whom were you sworn in?
A. Judge Lemken.
Q. Did he ask you questions?
A. Yes.
Q. And did you give the answers?
A. Yes.
Q. What specifically did he ask you about the surveillance?
A. "How long have you been watching the place?" and, you know, then I would tell him.
Q. Generally, you would do that. In this case do you have a recollection if you did?
A. Yes, I do.
*194 Q. Did he ask you about the surveillance?
A. Yes.
Q. Did you tell him when it had been?
A. Yes.
Q. What did you tell him?
A. I told him the surveillance was continuing while I was getting the warrant made up. Other members of the Squad were on the surveillance.
Q. Did you tell him when the surveillance had begun?
A. Yes. I put "ten days".
Q. It just says for a period of ten days?
A. That's just prior to the date of obtaining.
Q. Did you tell that to the Judge under oath?
A. Yes.
MR. MILLER: Objection. Leading.
BY MR. CASTANO:
Q. In connection with that ten day period, did you tell the Judge anything?
A. I told him, he asked me how long we were on the surveillance and I told him it was still on while I was getting the application.
Q. You told him that under oath?
A. Yes, I did.
The municipal judge who issued the warrant was called as a defense witness. He testified that he could not recall the specific application then before the court because of the large number of applications he had considered in the intervening time.
The County Court Judge in granting the motion to suppress stated:
I have no reason to disbelieve what Officer Potter told me, but I find no cases which permit an affidavit for a search warrant to be supplemented by the testimony of the officer applying for it. The cases indicate that either a transcript of the testimony given in addition to the affidavit or the testimony of the Magistrate are the methods by which that testimony can be brought before a reviewing court. Therefore, I don't believe the testimony of Detective Potter was competent and don't find it necessary to characterize as to credibility.
Then, relying on Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966), he held that the failure of the affidavit to contain an express statement as to the time when the surveillance was conducted was a fatal defect.
*195 Legal precedents are of dubious value when a court is called upon to determine whether a search warrant has been issued on probable cause. See State v. Kasabucki, 52 N.J. 110, 116-117 (1968). This observation is amply demonstrated by an examination of the trial judge's reasoning in determining that the evidence obtained pursuant to the warrant issued here should be suppressed. He noted that in Rosencranz the same deficiency (lack of a date as to the ten-day surveillance) was found to be a fatal defect. He then observed that Rosencranz followed a long series of at least a dozen cited cases in the federal system on all levels, including both the District and Supreme Court.
In Rosencranz, the court had under consideration a search based upon an affidavit of an extremely sparse nature. After reviewing several decisions in which the lack of a reference to the time at which surveillance activities which had taken place had not been referred to in affidavits used to procure warrants, the court said:
We conclude that a combination of undated, conclusory information from an anonymous source and an undated general allegation of personal observation by the affiant, with no other reasonably specific clues to the time of their happening, is inadequate. [Emphasis added]
The determination of whether or not there was probable cause for a warrant to issue must depend on the particular situation existing as it is disclosed either by the testimony or by the record. Rarely are two cases factually identical. Numerous decisions have made it perfectly plain that no mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause. As was stated in State v. Kasabucki, above, "each case depends upon a sensitive appraisal of the circumstances shown to the issuing judge." 52 N.J., at 117-118.
The affidavit filed in support of the warrant under review closely disclosed the activities of the investigating officers, *196 including the affiant, with respect to the activities of the defendant. There is reference to a ten-day period of investigation which included specific instances of conduct unquestionably disclosing to the officers that traffic in narcotics was being conducted. Further, in support of the observations made by the officers, the affidavit also included the fact that information had been given by a reliable informant as to the narcotics activities of this defendant. In support of Potter's conclusion as to the reliability of the informant, the affidavit included names of individuals who had been apprehended and convicted for narcotics violations on the strength of this same informant's information. One of the areas sought to be searched was a motor vehicle. Based on these facts, the affiant concluded that narcotics "are being stored" on the premises, which were specifically described, and in the motor vehicle, also specifically described. Taking all of these factors together, we are satisfied that there was sufficient contained in the affidavit to satisfy the issuing magistrate that the violations of the law described in the affidavit were currently occurring, and that the investigative activities of the investigating officers were likewise reasonably current.
The investigating officers involved here may well have had probable cause to believe that a crime was being committed in their presence during their investigation, and thus have arrested defendant and searched his motor vehicle without warrant. Instead, apparently mindful of the teachings of the courts with respect to the rights of citizens granted under the Fourth Amendment to the United States Constitution, they applied to the independent judicial mind, here a municipal judge, for a warrant. To characterize them now as "blundering constables" because of a technical defect in the supporting affidavit presented, can only serve to discourage them in the execution of their official activities in the future. As was stated by Mr. Justice Goldberg in United States v. Ventresca, 380 U.S. 102, 108-109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965):
*197 * * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

* * * * * * * *
Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.
See also: United States v. Ramirez, 279 F.2d 712 (2 Cir). cert. den 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed.2d 74 (1960); State v. Zuzulock, 39 N.J. 276 (1963).
While we reverse the order of suppression for the reasons just expressed, we deem it necessary to make some observations about the use of supportive testimony at the hearing, in view of the apparent confusion of the trial judge as to the propriety of its use.
The Fourth Amendment of the Constitution of the United States and Article I, Paragraph 7 of the Constitution of our State require that probable cause for a warrant be "supported by oath or affirmation." In accordance with these injunctions, our rule R. 3:5-3 (formerly R.R. 3:2A-3) requires that "an applicant for a search warrant shall appear personally before the judge who must take his affidavit or testimony before issuing the warrant." In the former rule, the word "deposition" was used in place of "testimony," but the meaning was the same. Our rule differs from federal Rule 41 (c), which requires that "a warrant shall issue only on affidavit sworn to before the judge, * * *." Under our rule, therefore, it is proper for an issuing judge, after having sworn the applicant for a search warrant, to interrogate the applicant as to the contents of the affidavit presented, and any additional facts which are known to the applicant at that time. The information so elicited can, of course, be *198 considered by the issuing judge in weighing whether probable cause exists. Concededly, better practice would dictate recordation of any supportive information.
If on subsequent proceedings to suppress the issue is one of probable cause, all of the factors before the issuing judge at the time he issued the search warrant must be before the reviewing judge, either in the form of the affidavit submitted, a transcript of any testimony given before the judge, or, if no transcript was taken, testimony based on notes made by the magistrate or on the recollection of either or both the applicant and the issuing judge. There is nothing in our cases requiring that the testimony of the issuing judge be taken at such a proceeding. The authorities relied on by respondent to this appeal, State v. Moriarty, 39 N.J. 502 (1963), and State v. Calabro, 81 N.J. Super. 422 (App. Div. 1963), do not hold that the testimony of the issuing judge is mandatory in such a situation. Readings of both of these opinions indicate that, under the circumstances existing in each case, the appellate court concerned directed that the testimony of the issuing judge involved be taken. We do not read these opinions so as to require such a procedure.
Of course, whether the testimony of the issuing judge will be taken at a hearing on a motion to suppress is a decision to be made by the State, or, conceivably by the defendant  as was done here  at the time of the motion. The mere lack of the corroborative testimony of the issuing judge does not, however, render testimony by the applicant incompetent.
The order of suppression is reversed.
GOLDMANN, P.J.A.D. (concurring).
My concurrence in the reversal is based solely on Detective Potter's affidavit, without regard to his uncorroborated testimony at the hearing on the motion to suppress. In testing the adequacy of such an affidavit our approach must be a common-sense one, nontechnical, ungrudging and positive. United States v. Ventresca, 380 U.S. 102, 108-109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Thus, "when the adequacy of the facts offered *199 to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." State v. Kasabucki, 52 N.J. 110, 116 (1968), citing Ventresca. Viewed in the light of those cases, I, like my colleagues, find the affidavit sufficient to support the search warrant which issued.
Rosencranz v. United States, 356 F.2d 310 (1 Cir. 1966), on which defendant relies, is not persuasive. As the main opinion points out, the affidavit there involved was unusually meagre. The only grounds recited for the issuance of a search warrant were: "Information given anonymously to the Affiant that the aforementioned materials [mash, distillation apparatus and nontax-paid alcohol] are being held on said premises" and "The detection of a strong odor of mash outside the premises by the Affiant." Although recognizing the holding in Ventresca  a case in which the First Circuit (324 F.2d 864 (1963)) had been reversed  the court held the affidavit invalid because it failed to allege the time when the affiant received information from the anonymous informant or the time when he detected the odor of mash outside the premises. In footnote 5 of the opinion (356 F.2d, at 315) the court summarized numerous authorities  all but two predated Ventresca  holding that such a defect was fatal. And see Annotation, "Search warrant: sufficiency of showing as to time of occurrence of facts relied on," 100 A.L.R.2d 525 (1965), and particularly 533.
In my view the Rosencranz court failed to give full value to Ventresca. Contrast Rider v. United States, 355 F.2d 192 (5 Cir.1966), and United States v. Slapo, 285 F. Supp. 513 (D.C.S.D.N.Y. 1968), where, as here, the affidavits contained an allegation couched in the present tense; and compare the more common-sense, nontechnical and positive approach of our highest court in such cases as State v. Zuzulock, 39 N.J. 276 (1963), and State v. Kasabucki, above.
NOTES
[1] STATE OF NEW JERSEY |
 > SS
 COUNTY OF HUDSON |

Det. Robert Potter of the Jersey City Police Department assigned to the Narcotics Squad, being duly sworn upon his oath, deposes, says and complains:
Within the premises situated 62 Franklin St., in Jersey City, N.J., on the third floor right, occupied by one PAUL CLEMENTE and within the confines of a 1964 Pontiac Black Vinil over maroon, N.J. Reg. B B C 990, and owned by one JOSEPH P. CLEMENTE of 83 Palisade Ave., in Jersey City, N.J., and operated by PAUL CLEMENTE previously mentioned, are being stored narcotics as defined in the New Jersey Statutes 24:18-4, known as the uniform narcotic drug law and/or narcotic paraphernalia.
The facts upon which these beliefs are based are as follows:
1. Personal surveillance by deponent and by Sgt. Edmond Spies of the Jersey City Police Department and by members of the Jersey City Police Narcotic Squad, for a period of ten days, during varied periods of the day and night time, has shown known narcotic violators and in company with PAUL CLEMENTE entering and leaving his home at 62 Franklin St., this city, and also seen in his company within the aforementioned automobile being the 1964 Pontiac, N.J. Reg. B B C 990. Among the persons seen entering and leaving the premises situate 62 Franklin St., in company with PAUL CLEMENTE include STANLEY RYDZEWSKI, WILLIAM NIPPING, JOHN PONTUS, LEONARD ERWINSKI, who are all narcotic users and violators of the Narcotic drug laws of the State of New Jersey. During this period of surveillance deponent noted that the said PAUL CLEMENTE would contact individuals clustered in a group on corners and would make personal contact with each person handling a small item and receiving something in return. In all cases the person with which he made this contact would immediately leave the scene. Included in these contacts were the aforementioned known users of narcotics and narcotic law violators. In many cases it was observed by the Jersey City Police Narcotics squad and by the deponent in particular that the aforementioned PAUL CLEMENTE would approach a group of persons on a street corner while operating the 1964 Pontiac N.J. Reg. B B C 990, and would use this vehicle for such unlawful purposes as aforementioned and being violations of the narcotics laws of the State of New Jersey.
2. Information from a reliable source which has proven exacting in the past and has led the Jersey City Police Narcotics Squad and the deponent in particular to the arrest of persons involved in Narcotic law violations. Among such persons who have been brought before the courts of the State of New Jersey for narcotic violations include: PAUL SUCHDOLSKI, RONALD SUCHDOLSKI AND JAMES BLANEY, JOHN HENNESSEY, ROBERT WARD. This informant has at close range seen the exchange of glassine bags from the person of PAUL CLEMENTE to persons who in return have given the said PAUL CLEMENTE United States Currency.
Therefor [sic] the deponent prays that a warrant may issue so the premises situate 62 Franklin St., third floor right apartment occupied by PAUL CLEMENTE and the person of the said PAUL CLEMENTE and the 1964 Pontiac N.J. Reg. B B C 990, may be searched in a manner prescribed by law.
 S/ Det. Robert Potter D320
Sworn and subscribed to before me this 20th day of January 1966.
 S/ John J. Lemken
 John J. Lemken, Magistrate Jersey City, N.J.