STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEONARD FARIELLO, DEFENDANT-APPELLANT.

Argued December 2, 1975—Decided November 10, 1976.

*Mr. Frank R. Krack,* Assistant Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Krack* of counsel and on the brief).

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

CLIFFORD, J. We granted certification, 68 *N. J.* 164 (1975), essentially to review the Appellate Division's determination that defendant's motion to suppress evidence seized pursuant to a search warrant was properly denied by the trial court. Following a jury trial resulting in convictions of possession of marijuana, possession of the same substance with intent to manufacture and distribute, maintaining premises resorted to by persons for the purpose of unlawful manufacture and distribution of marijuana, and possession of a dangerous knife, defendant was sentenced to four concurrent indeterminate terms at the Youth Correctional Institution Complex. The Appellate Division vacated the judgment of conviction for possession of marijuana, finding it merged with the possession-with-intent-to-distribute count, but affirmed the judgments of conviction on the three remaining counts. 133 *N. J. Super.* 114 (1975). Execution of the sentence has been stayed and bail continued pending appeal.

Defendant challenges the admissibility of testimony by the applicant for a search warrant at a hearing on a motion to suppress when, as here, the oral statements made by that applicant to the judge issuing the search warrant (hereinafter "issuing judge") have not been transcribed, summarized, or otherwise recorded by the issuing judge. A subsidiary question is whether quite apart from such testimony the warrant nevertheless was properly issued in this case because the applicant's affidavit was sufficient standing alone to establish probable cause. We determine both these issues in defendant's favor and consequently reverse the convictions on the narcotics charges. We affirm so much of the judgment of the Appellate Division as sustains the conviction for possessing a dangerous knife.

I

At the hearing on the motion to suppress, oral testimony of State Police Detective Sergeant Dale L. Parks disclosed

that his station had received a call from Dr. Norton, as a result of which the detective met with Dr. Norton at the latter's residence. According to Parks, Dr. Norton stated that he and his employee, Donald Quick, had found eighteen plastic bags of green vegetation in a duffel bag in the locked trunk of an old car the doctor had acquired from a resident of the adjoining property, one Ronald Rapp. The discovery was made after Quick informed the doctor that the car, which he had towed that day from the adjacent property and placed behind the doctor's barn, had a new hasp and lock on the trunk. The two men opened the trunk by removing the screws securing the hasp and found the duffel bag inside.

When Detective Parks examined the trunk, he found additional plastic bags similar to the ones previously discovered in the duffel bag. These were empty except for some residue of green vegetation. Parks returned the duffel bag and its contents to the trunk of the car, which then was placed under surveillance. Both the duffel bag and its contents subsequently disappeared.

Detective Parks learned from Dr. Norton and his family and from Quick that three persons occupied the premises adjoining Dr. Norton's home: Rapp, one Rosemary Maholanyi, and defendant. Further investigation revealed that the three had been living there for approximately six months and that there had been an unusual amount of vehicular traffic to and from the premises at all hours of the day and night. While Detective Parks could not determine from the Division of Motor Vehicles who owned the car in which the duffel bag had been found, he did ascertain that the defendant and Rosemary Maholanyi had prior arrests and convictions for narcotics violations.

From the information that he had thus far received, Detective Parks concluded that the premises next to Dr. Norton's residence contained an operation involving the processing and distribution of marijuana. He prepared an affidavit describing the premises to be searched (referring

to it as "the rented residence of Ronald J. Rupp [sic] and Rosemary Maholanyi") and indicating his belief that narcotic drugs were located therein. The grounds for this belief as stated in the affidavit were these:

The facts tending to establish the grounds for this application and the probable cause of my belief that such grounds exist are as follows: On Friday, March 3, 1972, DSG. D. L. Parks #1342 and Tpr. M. Callahan #1374, both members of the New Jersey State Police, with 17 and 11 years police experience respectfully [sic] had occasion to check the contents of an army type duffle bag, which was found in a vehicle which is under the control of Ronald J. Rapp and Rosemary Maholanyi. The contents of the duffle bag were numerous plastic bags, weighing approximately one pound apiece, which contained a green colored vegetation, with many small seeds, which both DSG. D. L. Parks and Tpr. M. Callahan identified as Marihuana. Both these police officers have made arrests of persons for possession of Marihuana, and have assisted in raids in which Marihuana has been recovered, along with other types of narcotic drugs. It is felt that there is the distinct possibility that more Marihuana, or narcotics, or narcotic paraphernalia, or prescription legend drugs may be found in the above described residence, and buildings, which are all accessible to both Ronald J. Rapp, and Rosemary Maholanyi.

The affidavit included none of the other facts or circumstances to which Detective Parks subsequently testified at the motion-to-suppress hearing.

At between 10:30 and 11:30 P.M. on the same day, Detective Parks took the affidavit to the residence of the issuing judge to obtain a search warrant. The judge did not "do anything physical" to him,[1] but Detective Parks gave information additional to that contained in the affi-

---

[1]This is the form in which the question was put by defense counsel to the detective at the hearing on the motion to suppress. Presumably the lack of either precision or elegance was intentional, counsel choosing to resort to the cryptic rather than telegraph his effort to create an issue on whether the detective had properly been sworn, as required, prior to giving testimony to the issuing judge. In light of the result we reach, we need not resolve the question of whether there was sufficient basis (as determined by the Appellate Division, 133 N. J. Super. at 118) for the finding of the trial judge that the oral statement was given under oath.

davit, including other facts revealed by the investigation and the sources thereof as recited above. Specifically, he explained to the issuing judge the circumstances of how and from whom Dr. Norton had received the car in question and told him that Dr. Norton was the source of that particular piece of information. No transcription or summary was made of Detective Parks' narration to the issuing judge.

The search warrant, signed and issued on March Third, was executed on the following night. During the interval spot surveillance was kept on the premises. At eleven o'clock on the night of March Fourth, Detective Parks and four troopers conducted the search after being admitted by Rapp and Maholanyi. Discovered were, among other things, bags containing what appeared to be marijuana, residue, stems and leaves of the same substance, empty plastic bags, assorted brass fittings, pipes and strainers, and a grey metal box containing personal papers including the defendant's birth certificate and a pill box in which was found a hard brown substance. The police seized these items and arrested Rapp and Maholanyi. Of the items which the police confiscated, those for which testing was appropriate were analyzed and determined to be marijuana and hashish, in a quantity of about 1205 grams.

The defendant was not at the scene of the search. The police came upon him the next morning near some woods where he apparently had fled the night before. He turned himself in, was placed under arrest and searched, and a hunting knife, tied to the outer back of his pants and concealed beneath his sweater, was taken from his person.

## II

As we have pointed out, the primary question to be resolved is whether the testimony of Detective Parks recounting the information which he gave to the issuing judge in support of the search warrant was admissible at the motion-to-suppress hearing on probable cause for issu-

ance of the warrant. Although it is unnecessary to cast the answer to this inquiry in constitutional terms, it is nonetheless important to recognize that in this discussion of the validity of a search we are dealing not with a "mere formality" but with an underlying "great constitutional principle embraced by free men and expressed in substantially identical language in both our federal and state constitutions." *State v. Macri,* 39 *N. J.* 250, 255 (1963). *U. S. Const.* amend. IV; *N. J. Const.* art. 1, ¶ 7. The motion-to-suppress hearing is the mechanism specifically designed to afford a defendant his most significant opportunity to participate in a process which vindicates the constitutionally-declared right against an unlawful search.[2] While our result may originate in a mandate of public policy, it is largely because of a concern for the constitutional right that we insist on a punctilious observance of the most effective precaution against its being undermined — transcription or contemporaneous (or nearly so) summary of all oral testimony given in support of the application for a search warrant.

Our rules of practice contemplate just such a prophylactic procedure. While it may be that there is not, in so many words, a direct, explicit command in any single rule that the judge holding a probable cause hearing on a search warrant application must have all oral testimony accompanying such application summarized or recorded, nevertheless a requirement of transcription or summarization is clearly implied. *R.* 3:5-3 instructs the judge to take an applicant's affidavit or testimony before issuing a search warrant. *R.* 3:5-6, dealing with the filing of warrants, requires that the issuing judge attach to the warrant, *inter alia,* "a transcript or summary of any oral testimony * * *."

---

[2] The significance is magnified in view of the recent Supreme Court decision holding that the federal habeas corpus remedy is no longer available after full and fair litigation in a state court of a Fourth Amendment claim. *Stone v. Powell,* —— *U. S.* ——, 96 *S. Ct.* 3037, 49 *L. Ed.* 2d 1067 (1976).

It would be somewhat anomalous for our rules to compel the filing of a transcript or summary, while at the same time not to require that a transcript or summary be made.[3]

One of the purposes of these rules, reflective of the policy behind today's decision, is to ensure that corroboration of what went on before the issuing judge is in a form which will give a reviewing court some real assurance as to what actually occurred.[4] That assurance simply cannot be gained without a transcript or summary. Certainly there is nothing novel about this ingredient of informed and effective review, it having been given recognition elsewhere almost fifty years ago in this precise search warrant context:

Judicial action must be reviewed upon the record made at or before the time that the judicial act was performed. The validity of judicial action cannot be made to depend upon the facts recalled by fallible human memory at a time somewhat removed from that when the judical determination was made."

[*Glodowski* v. *State*, 196 *Wis.* 265, 220 *N. W.* 227, · 230 (1928).]

---

[3]While our rules do not require summarization or recording of all judicial proceedings (see, *e. g.*, R. 1:2–2; R. 6:12–1(d) ; R. 7:4–5), when *review* of such proceedings is undertaken, either a transcript or settled statement of proceedings is required. R. 2:5–4(a). [One exception to this principle is R. 3:23–8(a) which provides that if no record of a proceeding in a court of limited criminal jurisdiction was made, a plenary trial *de novo* shall be had in the appeals court. This exception is not instructive in the motion to suppress context, however, since the crucial issue here is what occurred before the issuing judge, not what happened outside of the courtroom, which is the concern under a R. 3:23 appeal (a trial *de novo* is had whether or not a transcript exists, although if one does exist, the judge being appealed to must base his findings on the record).] The formulation of the settled statement of proceedings is governed by R. 2:5–3(e) which contemplates participation by both parties in the reconstruction of the record. Cf. *State v. Smith*, 84 *N. J. Super.* 452 (App. Div.), certif. den., 43 *N. J.* 270 (1964). In the motion-to-suppress context, however, since the defendant was not present at the issuance of the warrant, he cannot very well participate in reconstruction of the record.

[4]Both this policy favoring fair review and the policy of affording a defendant a realistic opportunity to attack the warrant are further

See also, *e. g., State v. Robertson*, 111 *Ariz.* 427, 531 *P.* 2d 1134, 1135–36 (1975); *Cockrell v. State*, 256 *Ark.* 19, 505 *S. W.* 2d 204, 206 (Ark. 1974); *People v. Brethauer*, 174 *Colo.* 29, 482 *P.* 2d 369, 374 (1971). *Cf. United States v. Freeman*, 358 *F.* 2d 459, 462 (2d Cir.), *cert.* den., 385 *U. S.* 882, 87 *S. Ct.* 168, 17 *L. Ed.* 2d 109 (1966); *United States v. Anderson*, 453 *F.* 2d 174 (9th Cir. 1971); *United States v. Hatcher*, 473 *F.* 2d 321, 323–24 (6th Cir. 1973).

Review of an issuing judge's conclusion that there exists probable cause for the issuance of a search warrant entails apperception of certain nuances in the evaluation of supporting evidence. While we may expect the practiced judicial eye to recognize the subtleties, we are loathe to expose the review process to that uncertainty which assuredly must accompany the vagaries of recollection of either the applicant for the warrant or the issuing judge. As observed in *State v. Stolzman*, 115 *N. J. Super.* 231, 236 (App. Div. 1971):

[F]or the protection of all parties involved and to facilitate the administration of justice, the recording of testimony, either by transcript or summary, should be mandatory. * * * Without such a record a fair review at a later time is, at the least, extremely difficult. Under *R.* 3:5–6 a defendant is entitled to know before a hearing on a motion to suppress all of the facts upon which a warrant was issued. Given the large number of warrants that are applied for by individual police officers and issued by judges, it is too great a burden on the administration of justice to rely on the ability of an applicant or an issuing judge to accurately recall such past events.

See also *Model Code of Pre-Arraignment Procedure*, § SS 220.1(4) and Commentary, pp. 510–11 (Proposed Official Draft, April 15, 1975).

Additionally, we cannot be unmindful of the possibility that an overzealous law enforcement officer may, subcon-

---

advanced by *R.* 3:13–3(a)(10), adopted June 29, 1973 (more than a year after the search in question) to be effective September 10, 1973. That Rule permits discovery by a defendant of the papers accompanying executed warrants "including the affidavits, transcript or summary of any oral testimony * * *."

sciously or otherwise, be tempted to rectify any deficiency in his testimony before the issuing judge by post-search repair for the benefit of the trial judge. A substantially contemporaneous recordation obviates this threat.

The State argues that *State v. Macri*, 39 *N. J.* 250 (1963), sanctions the consideration at a motion-to-suppress hearing of the oral reconstruction of nontranscribed testimony. In *Macri*, this Court, at the same time it granted certification in two cases involving the sufficiency of an application for a search warrant, ordered that "testimony be taken with respect to facts in the State's possession and the facts disclosed to the issuing judge at the time the search warrants were obtained." 39 *N. J.* at 252. That order was issued on June 29, 1962 (38 *N. J.* 184), however, which was several months prior to the adoption of the predecessor to *R.* 3:5, *RR.* 3:2A.[5] In view of our determination that it is the policy of fair review which mandates the exclusion of the oral testimony, that chronology is of significance in evaluating *Macri's* use as a precedent. Moreover, the adoption of *RR.* 3:2A represented a change in policy from that implicit in the *Macri* Court's earlier order compelling reconstruction of the testimony which had been given to the issuing judge. The *Macri* opinion referred to that testimony only for the purpose of highlighting the obvious weakness of the claim of probable cause — *i. e.*, even with the benefit of the facts revealed by that testimony, the otherwise insufficient affidavit was beyond rehabilitation. The *Macri* Court did not have our issue before it, and the reference to and use of reconstructed testimony cannot be said to represent that Court's imprimatur upon the procedure advocated here by the State and approved by the courts below.

---

[5] *RR.* 3:2A was adopted on December 6, 1962 to be effective January 2, 1963. The source rules of our present *R.* 3:5–3 and *R.* 3:5–6 were then in substantially the same form as the cited rules appear today.

*State v. Burrachio,* 39 *N. J.* 272 (1963), also offered in support of the State's position, is likewise inapposite. In *Burrachio,* the trial court gave the State an opportunity to present additional proof of probable cause. This Court did not expressly disapprove that procedure, although it did impose a requirement that such additional proof be "submitted in verified form to the judge at the time of the application." 39 *N. J.* at 275. There the State did not in fact present additional testimony for consideration on the issue of probable cause, and as in *Macri* the issue here before us was not projected. In any event, to the extent that *Macri* and *Burrachio* sanction a rule of admissibility different from that specified herein they no longer represent acceptable authority. The same is true of *State v. Calabro,* 81 *N. J. Super.* 422, 428 (App. Div. 1963) and *State v. Clemente,* 108 *N. J. Super.* 189 (App. Div. 1969), certif. den., 55 *N. J.* 450 (1970).[6]

Before turning our attention to the affidavit offered in support of the warrant, we are constrained to note our disagreement with the implication by the court below that to exclude reconstruction of oral testimony given to an issuing judge is to ignore the practicalities surrounding an application for a search warrant. See 133 *N. J. Super.* at 119. While it is true that in the instant case the application was made at the issuing judge's home at eleven o'clock at night and some difficulty might have been encountered in acquiring the services at that hour of a stenographer to transcribe oral testimony, our rules calling for the recording of oral testimony do not insist on transcription exclusively but permit alternatively a summarization by the judge of what-

---

[6] Inasmuch as we ground our determination on this issue chiefly on the policy of fair and accurate review, there is no occasion to deal with the State's contention that the primary purpose behind the exclusionary rule, deterrence of bad faith police conduct, will not be further achieved by extension of that rule to the area of non-recorded testimony before the issuing judge, where police conduct is not at all involved.

ever testimony may have been given before him. Such a summarization should of course be made close upon the completion of that testimony, while the matter is still fresh in the judge's mind. Certainly in the circumstances here presented this requirement could have been complied with by the issuing judge.[7]

## III

Having determined that a failure to record contemporaneously the oral representations of the applicant precludes the later use of oral reconstruction of that testimony, we now proceed to examine the sufficiency of the affidavit, the sole surviving potential repository of the foundation for a finding of probable cause. In determining if probable cause for the issuance of a search warrant exists, the issuing judge "must properly be made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated." *State v. Macri, supra,* 39 *N. J.* at 257. See also, *e. g., Aguilar v. Texas,* 378 *U. S.* 108, 84 *S. Ct.* 1509, 12 *L. Ed.* 2d 723 (1964); *State v. Petillo,* 61 *N. J.* 165, 173 (1972) *cert.* den., 410 *U. S.* 945, 93 *S. Ct.* 1393, 35 *L. Ed.* 2d 611 (1973). Critical to his analysis of the underlying facts and circumstances is the issuing judge's evaluation of the credibility of the affiant, *State v. Petillo, supra,* 61 *N. J.* at 173; see *State v. Burrachio, supra,* 39 *N. J.* at 274. Part of that evaluation is due consideration of the source of the facts stated in the affidavit, *State v. Burrachio, supra. Cf. Giordenello v. United States,* 357 *U. S.* 480, 78 *S. Ct.* 1245, 2 *L. Ed.* 2d 1503, 1509 (1958).

---

[7]We offer no opinion on the admissibility of a later reconstruction when inadvertence has occasioned the loss of the affidavit or of a proper contemporaneous recording of oral testimony, see *State v. Harris,* 98 *N. J. Super.* 502 (App. Div.) certif. den., 51 *N. J.* 396 (1968), as that question is not before us.

Where the affidavit does not indicate the source of facts recited therein, it is impossible for the issuing judge to evaluate the credibility of the affiant. The failure to specify the source presents even more of a deficiency in the affidavit than exists when the source is mentioned but sufficient facts are not presented to support a finding of reliability by the issuing judge. See, *e. g., Aguilar v. Texas, supra; State v. Macri, supra,* 39 *N. J.* at 262.

In the instant case the affidavit in effect states only that the investigating officer found marijuana in an automobile under the control of Rapp and Maholanyi. Neither the source of this "control" conclusion nor the facts underlying it are specified. Nor does the affidavit, when read as a whole, reasonably suggest that this conclusion was made as a result of the personal observations of the affiant or other investigating officers. See *State v. Zuzulock,* 39 *N. J.* 276 (1963).[8] The affidavit therefore cannot properly be evaluated as to credibility by anyone. Moreover, there are presented no other underlying facts which would permit the affiant's suspicions to generate an independent judicial determination that a crime was probably being committed on the subject premises. The document was therefore patently insufficient as a basis for a finding of probable cause.

## IV

Finally, we address defendant's attack on the conviction for possession of a dangerous knife, a violation of *N. J.*

---

[8]Viewing Detective Parks' information as to ownership of the vehicle as hearsay, the affidavit remains deficient inasmuch as it fails to meet the two-pronged test set out in *Aguilar v. Texas, supra,* for determining the sufficiency of proofs supported by hearsay. That test requires that (1) the reliability of the source of the facts based on hearsay appear in the affidavit, and (2) the actual circumstances recited in the affidavit demonstrate a basis for the conclusion drawn by the source thereof. See *State v. Southard,* 144 *N. J. Super.* 501 (App. Div. 1976). The affidavit in this case satisfies neither of those tests.

*S. A.* 2A:151-41(c). As to the jury charge on this offense, we agree with the Appellate Division's appraisal of it as being without the capacity to produce an unjust result. 133 *N. J. Super.* at 122. Defendant further argues that this conviction should be vacated because "[t]he seizure of the 'dangerous knife' from defendant's person was the result of an arrest which was the fruit of an unlawful search" of the premises occupied by defendant. This overlooks both the circumstances of the arrest and the ample evidence justifying it wholly independent of that uncovered by the illegal search of the premises.

Defendant's own testimony demonstrates that while he was not in the house when the police arrived and the search was conducted, he was in the adjoining woods and saw Rapp and Maholanyi being escorted away by the officers. Sometime after everyone else had left the scene, Fariello entered the house, observed its state of disarray, made arrangements by telephone to be picked up by a friend, then went "down the road" to await his ride. A "plain car" came along and defendant attempted to flag it down, thinking it was his friend. As Fariello described it at trial:

And I went out and I put my hand on the doorknob and opened it. And suddenly there was a flashlight in my face and said "hold it right there."
Q. Did you observe who was in the car?
A. No. I just had a light in my face.
Q. What did you do as a result of that, Mr. Fariello?
A. Started running.
Q. Where did you run?
A. I ran about 100 yards and I heard, "Stop or I will shoot." And I stopped dead in my tracks and I turned around and said, I says, "Well, you don't have anything to shoot me for." And then I turned around and I started running again. I was convinced they didn't have anything to shoot me for.
Q. Did you know who it was at that time?
A. I didn't know exactly, but I assumed.
Q. Well, what did you assume?
A. That it was the police. * * *

After spending the night in the woods he realized the futility of this course of action and gave himself up.[9]

■ Whatever the motivation may have been,[10] the fact remains that this submission to custody was entirely voluntary. It is equally clear that when defendant surrendered, he made a second volitional choice: to surrender while possessing a knife. Its discovery on the ensuing search of his person (which the police were entitled to conduct as incidental to his arrest) was entirely unrelated to the "fruits" of the officers' search of the house. In these circumstances the weapons charge, resulting from a separate, independent and volitional act of Fariello, cannot be said to be in any wise connected with the earlier proscribed police conduct, particularly in light of the intervening flight from attempted apprehension after refusal to obey a police command to stop.

The same result is achieved if we approach the issue on a straightforward warrantless arrest-warrantless search basis. We start with the reminder that quite apart from the evidence revealed by the illegal search of the house, there was other evidence wholly independent thereof which would not only excite the investigatory impulses of the police but would in fact justify a conclusion that defendant was part and parcel of illicit drug-related activity and should therefore be taken into custody. That evidence consisted of much more than was recited in the affidavit offered to support the

---

[9]Fariello testified:
[A]ll these cars were circling where I was, police cars, and I didn't want to get caught, because I figured I would get wrapped up in trouble with that, and I wanted to get my friends out of jail. And I figured, well, if they apprehended me, I would just be dragged in with all the rest of them, and I didn't think it would be realized it was impossible. So, I came out of the woods.
Q.  Did you meet an officer?
A.  Yes, I walked down the street. I wasn't running away from him and I saw one and I went to his car.

[10]The arresting officer testified Fariello's first words to him were "I am giving myself up because I have to get money for my friends that you have in jail."

search warrant, and indeed more (given the circumstances of attempted apprehension and flight recited above) than was available at the time the warrant was sought. While we in no way suggest that there are two standards to be applied for a determination of probable cause — one related to that necessary for a search warrant and a different one necessary for an arrest — we do focus on the sufficiency of evidence available to the police at the time of the arrest in order to determine whether there existed probable cause to arrest this defendant.

The search of Fariello without a warrant would be permissible if incident to a lawful arrest. *Henry v. United States,* 361 *U. S.* 98, 102, 80 *S. Ct.* 168, 171, 4 *L. Ed.* 2d 134, 138 (1959); *State v. Doyle,* 40 *N. J.* 320, 324 (1963); *State v. Taylor,* 81 *N. J. Super.* 296, 307 (App. Div. 1963). The lawfulness of warrantless arrests by state officers for state offenses is determined by reference to state law insofar as it is not violative of the Federal Constitution. *Ker v. California,* 374 *U. S.* 23, 34, 37, 83 *S. Ct.* 1623, 1630, 1631, 10 *L. Ed.* 2d 726, 738, (1963): *State v. Fair,* 45 *N. J.* 77, 86 (1965). New Jersey follows the common law of arrest, *ibid.,* which permits a police officer to effect a warrantless arrest when he has probable cause to believe that a crime has been or is being committed and that the person to be arrested has committed or is committing it. *E. g., State v. Smith,* 37 *N. J.* 481, 495 (1962), *cert.* den., 374 *U. S.* 835, 82 *S. Ct.* 1879, 10 *L. Ed.* 2d 1055, (1963); *State v. Doyle,* 42 *N. J.* 334, 345–46 (1964). Probable cause for an arrest is "something less than proof needed to convict and something more than a raw, unsupported suspicion." *State v. Davis,* 50 *N. J.* 16, 23 (1967), *cert.* den., 389 *U. S.* 1054, 88 *S. Ct.* 805, 19 *L. Ed.* 2d 852 (1968). As the expression makes clear, probable cause implicates only probabilities, characterized by the Supreme Court as "not technical" but "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 *U. S.* 160, 175, 69

*S. Ct.* 1302, 93 *L. Ed.* 1879, 1890 (1949). See *State v. Burnett,* 42 *N. J.* 377, 387 (1964). It is, in short, a "commonsensible rather than a technical concept * * *." *State v. Mark,* 46 *N. J.* 262, 271 (1966). And in concluding that probable cause exists sufficient to justify an arrest without a warrant, police are not confined to consideration only of evidence admissible in a courtroom. *E.g., State v. Burnett, supra,* 42 *N. J.* at 387; *State v. Cook,* 47 *N. J.* 402, 414 (1966).

Here the police had information from Dr. Norton and others that Fariello was one of the occupants of premises on which had been kept an automobile containing large quantities of marijuana, and that vehicular traffic to and from those premises was unusually heavy. They determined that Fariello had previously been convicted for narcotics offenses. Those facts, together with defendant's entirely unambiguous flight from the police, *cf. Wong Sun v. United States,* 371 *U. S.* 471, 482, 83 *S. Ct.* 407, 414, 9 *L. Ed.* 2d 441, 452 (1963), surely amount to more than "raw, unsupported suspicion" and are enough to satisfy the requirements of probable cause for the belief that Fariello was involved with narcotics and to justify his arrest. The contemporaneous search of his person which disclosed the knife was likewise lawful. See *State v. Griffin,* 84 *N. J. Super.* 508, 517 (App. Div. 1964). The conviction for possession of a dangerous knife stands on its own supporting evidence and is neither the product of nor tainted by the unlawful search of the house.

Neither of these approaches to this phase of the case is at all diluted by *Brown v. Illinois,* 422 *U. S.* 590, 95 *S. Ct.* 2254, 45 *L. Ed.* 2d 416 (1975). Even though the evidence sought to be introduced there (inculpatory statements) was held inadmissible, the case clarifies the "independent evidence" rule. The defendant was interrogated at police headquarters following what was later determined to be an illegal arrest. The police gave the required *Miranda* warnings after which defendant made two inculpatory statements

regarding a murder. After trial, conviction on the murder charge was upheld by the Illinois Supreme Court on the grounds that the *Miranda* warnings operated to break the causal chain between the illegal arrest and the confessions so as to "dissipate the taint" of the illegal activity. In rejecting this reasoning the Supreme Court noted:

> In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, Wong Sun [v. United States, *supra*] requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." *  *  * Wong Sun thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment.
>
> [*Id.* at 602, 95 *S. Ct.* at 2261, 45 *L. Ed.* 2d at 426.]

The Court did, however, leave open the question of whether any confession following an illegal arrest could be a product of a free will on the defendant's part for determination on a case by case basis. The Court suggested guidelines to aid future determinations, *i.e.,* the time between the arrest and confession, intervening circumstances, and the purpose and flagrancy of the abusive police conduct. *Id.* at 603–04, 95 *S. Ct.* at 2261–2262, 45 *L. Ed.* 2d at 426–27.

Justices Powell and Rehnquist, in their concurrence, suggest that the last of the criteria is the most important. In their opinion a mere "technical" violation, such as where the officers act in good faith and arrest a person *"in reliance on a warrant later invalidated* or pursuant to a statute that subsequently is declared unconstitutional," should not necessarily force them to "bury" evidence derivatively obtained. *Id.* at 611–12, 95 *S. Ct.* at 2266, 45 *L. Ed.* 2d at 431–32 (emphasis supplied).

Even though uncritical application of the principles developed in confession cases such as *Brown* is not completely appropriate in cases such as the instant matter (since no Fifth Amendment issue is clearly present), the rationale

underlying the opinion is helpful. By rejecting the imposition of the "but for" rule (under which there would be an automatic exclusion of all evidence which would not have been discovered but for the initial illegal search), the Court appears to have limited the "fruit of the poisonous tree" doctrine to those cases in which sanctioning of police misconduct would be abhorrent to the spirit of the Fourth Amendment. See *U. S. v. Scios*, 75–1619 (D. C. Cir., filed Aug. 23, 1976).

A recent decision from Florida's highest court seems much more on point than the confession situation and the rationale seems highly appropriate for application in this case. *Sheff v. State*, 329 *So.* 2d 270 (Fla. 1976), presented a situation in which the defendant had been registered in a motel room but was temporarily out of the room. A chambermaid admitted herself during this period and saw what she suspected to be marijuana lying loose in a suitcase. She summoned police officers to the scene. While the police were on the premises, the motel manager noticed the defendant turn into the motel parking lot and then quickly drive away. One of the police officers followed defendant, stopped him, informed him of his rights, took his license away, and then ordered defendant to follow the officer back to the motel. On the return drive the officer noticed that Sheff was concerned with something on the floor of his car, and then saw Sheff throw out of the car window a plastic bag which later was found to contain marijuana. He arrested and handcuffed the defendant, searched his car, and discovered another plastic bag containing marijuana as well as drug-related paraphernalia. Following this sequence of events, a search warrant was obtained for the motel room and additional contraband items were seized.

Although at trial the court determined that the initial entry into the motel room was illegal, defendant was nonetheless convicted of possession of marijuana. On appeal the state argued that Sheff's act of throwing the bag from his car was an intervening act and was not the "fruit" of the

illegal entry. Sheff argued that his rights were violated a second time by the arrest in his car without probable cause. The Supreme Court of Florida upheld the conviction, concluding that even though the officer based his actions to some degree on illegally obtained evidence, he also acted on the basis of legally obtained evidence, *i.e.,* the observation of Sheff throwing the bag from his car, and that evidence alone was sufficient to give him probable cause for the arrest and subsequent search.

The reasoning of the *Sheff* court would seem applicable here. Even if it be assumed that the leads which resulted in the police wanting to apprehend Fariello were based partly on the illegally obtained information resulting from the raid and arrest, they also had, as we have endeavored to demonstrate, other evidence which was legally obtained, forming the basis for probable cause to arrest and to search Fariello incident to that arrest.

## V

The judgments of conviction for possession with intent to manufacture and distribute marijuana and of maintaining premises resorted to by persons for the purpose of unlawful manufacture and distribution of marijuana are reversed and the sentences thereon vacated. The judgment of conviction for possession of a dangerous knife is affirmed.

SCHREIBER, J. (dissenting). I would affirm substantially for the reasons expressed in the Appellate Division opinion of Judge Crane. 133 *N. J. Super.* 114 (1975).

The question simply put is whether on a motion to suppress evidence seized pursuant to a search warrant, it is proper to determine what the judge who signed the search warrant relied upon when a stenographic transcript of the proceedings before him or his written summary of the evidence is not available. Put another way, should evidence be suppressed which was obtained in accordance with a search warrant issued upon sworn testimony which constituted

probable cause although no stenographic transcript or written summary of the proceedings existed.

In addition to considering the affidavit or affidavits presented to him by law enforcement officers before deciding whether a search warrant may issue, a judge may also hear and rely upon oral testimony. Until at least January 1963, our rules neither explicitly or implicitly required a transcript or written summary of evidence used in a warrant proceeding. The use of oral testimony to ascertain what had transpired before the judge was sanctioned and directed by this Court. *State v. Macri,* 39 *N. J.* 250 (1963). Courts have consistently held that non-recorded oral testimony may supplement an otherwise insufficient affidavit to demonstrate that there is probable cause for the issuance of a search warrant. *United States v. Hill,* 500 *F.* 2d 315, 320–321 (5th Cir. 1974), *cert.* den. 420 *U. S.* 931, 95 *S. Ct.* 1135, 43 *L. Ed.* 2d 404 (1975); *United States ex rel. Gaugler v. Brierley,* 477 *F.* 2d 516 (3d Cir. 1973); *Campbell v. Minnesota,* 487 *F.* 2d 1, 4–5 (8th Cir. 1973); *United States v. Berkus,* 428 *F.* 2d 1148, 1152 (8th Cir. 1970); *United States ex rel. Pugach v. Mancusi,* 411 *F.* 2d 177, 180 (2d Cir.) (by implication), *cert.* den. 396 *U. S.* 889, 90 *S. Ct.* 172, 24 *L. Ed.* 2d 163 (1969); *Sherrick v. Eyman,* 389 *F.* 2d 648, 651–652 (9th Cir.), *cert.* den. 393 *U. S.* 874, 89 *S. Ct.* 167, 21 *L. Ed.* 2d 144 (1968); *Commonwealth v. Milliken,* 450 *Pa.* 310, 300 *A.* 2d 78, 80–81 (1973); *Oliver v. State,* 46 *Ala. App.* 118, 238 *So.* 2d 916, 921 (Ala. Crim. App. 1970).

Neither the United States nor the New Jersey Constitutions mandates that the testimony taken before the issuing judge be recorded or summarized in writing by him or anyone else.

The Fourth Amendment requires *only* that the judicial officer issuing a search warrant be supplied sufficient information, under oath or affirmation, which would support an independent judgment that probable cause exists for the warrant's issuance. [*United States ex rel. Gaugler v. Brierley,* 477 *F.* 2d at 522].

This position is sound and in harmony with views previously expressed by this Court. *See State v. Petillo*, 61 *N. J.* 165, 173–174 (1972), *cert.* den. 410 *U. S.* 945, 93 *S. Ct.* 1393, 35 *L. Ed.* 2d 611 (1973); *State v. Burnett*, 42 *N. J.* 377, 388 (1964). Other than being under oath, the manner or method of preserving or recording that information is not constitutionally mandated.

Our rules contemplate that the oral testimony presented at the probable cause hearing be recorded or summarized in writing by the judge. *R.* 3:5–3 and *R.* 3:5–6. *R.* 3:5–3 reads in pertinent part:

An applicant for a search warrant shall appear personally before the judge who must take his affidavit or testimony before issuing the warrant. The judge may also examine, under oath, any witness the applicant produces, and may in his discretion require that any person upon whose information the applicant relies appear personally and be examined under oath concerning such information. If the judge is satisfied that grounds for granting the application exist or that there is probable cause to believe they exist, he shall date and issue the warrant identifying the property to be seized, naming or describing the person or place to be searched and specifying the hours when it may be executed. * * *

*R.* 3:5–6 provides:

The judge who issued the warrant shall attach thereto the return, inventory and all other papers in connection therewith, including the affidavits and a transcript or summary of any oral testimony, and file them with the county clerk of the county wherein the property was seized. All warrants which have been completely executed and the papers accompanying them, including the affidavits, transcript or summary of any oral testimony, return and inventory, shall be available for inspection and copying by the defendant as provided in *R.* 3:13–3 and by any person claiming to be aggrieved by an unlawful search and seizure upon notice to the county prosecutor for good cause shown.

The prophylactic purposes of these rules, namely, to record accurately what transpired before the issuing judge and to afford the defendant an opportunity to examine that record, are salutary. Nevertheless, we should not blindly adhere

to those requirements, particularly when we know: (1) what evidence was submitted to the judge; (2) that the evidence was sufficient to constitute probable cause; and (3) that to ignore those facts frees a guilty person simply because of a procedural rule, not because of any constitutional basis. Our rules have been designed to provide fair procedures which ensure just determinations. For that reason *R.* 1:1–2 states that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice."

Where proof of the prior testimony before the issuing judge can be reconstructed at the subsequent hearing without invalidating any constitutional principle, there is no constitutional or other justification for construing court rules to impose an absolute irrefragable duty under all circumstances to make a transcript or written summary. As a matter of sound judicial policy and in accordance with *R.* 1:1–2, the recordation or written summary of the evidence implied by *R.* 3:5–3 and *R.* 3:5–6 may be dispensed with if an injustice results.

Furthermore, the judge's inadvertent failure to make a written summary of the testimony, which is otherwise satisfactorily established, may be considered a minor irregularity that should not devitalize the search. *R.* 3:5–7(d) may well contemplate an omission of that type. It provides that "[i]n the absence of bad faith, no search or seizure made with a search warrant shall be deemed unlawful because of technical insufficiencies or irregularities in the warrant or in the papers or proceedings to obtain it, or in its execution."

In this case, suppression of the evidence obtained as a result of the warrant hinders enforcement of the law without sufficient justification. The matter was presented to the judge on a Friday night between 10:30 and 11:30 P.M. at his home. A court reporter was not available. Unfortunately, the judge is deceased so that his notes or summary, if he made any, and his testimony are unavailable. At the hearing on the motion to suppress, held approximately three and

one half months later, the detective, whose affidavit had been acknowledged by the judge, testified to the additional information he furnished that night. His credibility has been attested to by the trial judge who heard the motion to suppress. He found and concluded that the substance of the affidavit and testimony was sufficient to establish probable cause for the issuance of the warrant. The defendant does not insinuate or imply that the trial judge's evaluation of the detective's testimony was incorrect. In fact, the detective had been subjected to searching cross-examination and the record supports the trial judge's findings. To disregard those findings is not warranted. *State v. Johnson,* 42 *N. J.* 146, 163–164 (1964).

Since probable cause had been demonstrated to the issuing judge, the defendant suffered no prejudice aside from the inconvenience of filing the motion to suppress. No claim of bad faith has been made against the State. The trial has been held and the defendant convicted on the basis of competent evidence. Under all these circumstances, the transcript or written summarization requirement of our rules should be relaxed so that the ends of justice may be served and *R.* 3:5–7(d) recognized. The establishment of probable cause for the issuance of the warrant should not be annulled because of failure to satisfy a ministerial formal requirement. *State v. Clemente,* 108 *N. J. Super.* 189 (App. Div. 1969), certif. den. 55 *N. J.* 450 (1970) ; *State v. Harris,* 98 *N. J. Super.* 502 (App. Div. 1968), certif. den. 51 *N. J.* 396 (1968) ; *State v. Parsons,* 83 *N. J. Super.* 430, 445 (App. Div. 1964) ; *State v. Cymerman,* 135 *N. J. Super.* 591, 597–598 (Law Div. 1975).

In *State v. Harris, supra,* the defendant unsuccessfully sought to suppress evidence because the affidavit upon which the warrant was based had been lost and therefore was not filed as required by the rule. The court commented:

The rule requiring the filing of the affidavit is directory only. It was adopted in order to facilitate the administration of justice. It

may not be used to frustrate that objective. The failure to comply with that rule does not automatically result in the invalidity of an affidavit or a warrant otherwise lawful. A wrongdoer should not benefit by the suppression of incriminating evidence simply because those documents have been lost. [98 *N. J. Super.* at 504–505].

It should be emphasized that the prosecutor's burden is substantially simplified on a motion to suppress hearing if a transcribed or summarized record of the oral testimony is available. But in those occasional instances where these rules have not been followed and probable cause is established at a later properly conducted adversarial hearing, with all its attendant safeguards for establishing the truth, then suppression of relevant incriminating evidence distorts and frustrates the fact-finding process. Our procedural rules were not created to bury the truth.

Some five years ago, this Court in *State v. Bisaccia,* 58 *N. J.* 586, 589 (1971), commented:

\* \* \* On a motion to suppress we deal with evidence of guilt, and the purpose of the litigant is to conceal that evidence to the end that he will escape conviction notwithstanding his guilt. Hypothetically there could be some case in which the evidence sought to be suppressed would falsely suggest guilt, but a judge would be short in realism if he did not understand that the evidence he is asked to suppress is evidence of guilt and that the judgment of not guilty which will ensue will likely be false. To justify so serious an insult to the judicial process, some compensating gain should be incontestable.

The policy enunciated then is equally applicable today.
I would affirm.

*For affirmance in part and reversal in part*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For affirmance*—Justice SCHREIBER—1.